## MILLER v. The COMMONWEALTH.

In an action against a sheriff after evidence of a return of levied on personal property, the sheriff's return to a *venditioni* that the defendant had neglected to give indemnity according to his promise, and to an *al. vend.* that he could not find the goods levied on, are inadmissible in evidence.

If the sheriff has returned "levied," ownership of the goods by a stranger is no defence for the sheriff in an action by the plaintiff in the execution, though there has been no sale.

If after delivery of a *fi. fa.* to the sheriff, with notice of an adverse claim to the property directed to be seized, the sheriff does not demand indemnity, which the plaintiff had agreed to furnish at any time before the day of sale, the sheriff is liable if the property belonged to the defendant, though plaintiff may not have given indemnity, for which there was no demand.

In error from the Common Pleas of Clinton.

*May* 26. This was an action of debt against the sheriff and his sureties in an official bond. The plaintiff proved a judgment against Harvey and Fleming; a *fi. fa.* and return of "levied on a horse, wagon, sleigh, and clock." He then proved that prior to the delivery of the writ, he had called on the sheriff to make a levy on some lumber of the defendants, and informed him that it was claimed by a stranger, but that he might go on and plaintiff would give a bond of indemnity at any time before the day of sale. The sheriff was satisfied, and did not require a bond at that time. He then gave evidence that the lumber in their possession belonged to defendants in the execution. The defendants then offered in evidence the *venditioni* and *al. vend.*, at the terms succeeding the *fi. fa.*, to the first of which there was a return,—that the property mentioned in the writ being claimed by third persons, and plaintiff having promised to indemnify, and having neglected so to do, he had refused to sell. To the *alias* the return was,—that he had made diligent search for the property mentioned in the writ, and could find no part of it in his bailiwick: all of which were rejected by the court. The defendants then gave evidence that the lumber was not the property of the defendants in the execution; and they further offered evidence of the same character as to the property levied on, which was rejected.

The court (Woodward, P. J.) after leaving it to the jury to decide whether this was a case for requiring indemnity, said, The conversation respecting indemnity seems to have regarded the lumber, as that alone was in dispute. If the sheriff waived indemnity on an agreement by plaintiff to furnish it when required, it was his duty to go on and make a levy, and he might have required indemnity before the sale. If they parted on that understanding, the plaintiff's failure to tender it did not excuse the sheriff. This, however, would not give a right of action to the plaintiff if the property did not belong to the defendants in the execution, and the question whether the lumber was liable to the execution was left to the jury. But as to the property actually levied on, the question of ownership was immaterial, for that was in the custody of the law, and the sheriff was bound to make some disposition of it unless the

plaintiff refused to indemnify him, and then he should have returned that fact, as an excuse for not selling.

The rejection of the evidence, and the charge " as to the indemnity, and that the ownership was immaterial," were the errors assigned.

*Armstrong* and *Blanchard*, for plaintiffs in error.—The returns are part of the record, against which there can be no averment. And the sheriff may return any matter of excuse, and by it he is precluded from setting up any other defence; Spangler *v.* Commonwealth, 16 Serg. & Rawle, 68.   It was shown by the plaintiff that there was an adverse claim, in which case he was bound to tender a bond of indemnity; nor is the sheriff bound to levy on the goods of a stranger; Commonwealth *v.* Watmough, 6 Whart. 140; and he may take this course instead of demanding indemnity.

*McAllister*, contrà.—The sheriff cannot be permitted to manufacture evidence; and here it was his return to a *venditioni* at a term succeeding the return of the *fi. fa.*, when he was fixed.   The demand and refusal of indemnity must appear in the return ; Hall *v.* Galbraith, 8 Watts, 222; Spangler *v.* Commonwealth, 16 Serg. & Rawle, 68.   In Commonwealth *v.* Watmough there was no levy, but a return of *nulla bona.*

*June* 14.  COULTER, J.—The rule is, that a sheriff must execute a writ of *fieri facias* at his peril.   And in England it seems to be well settled that he cannot contradict his return for the purpose of relieving himself from the liability which the return imposes. Thus, where he returns—goods levied, with a schedule,—he assumes the responsibility that they belong to the defendant, and he will afterwards, as a general rule, be estopped from denying that they were such.   It may in some cases be hard, but considerations of public policy outweigh and countervail all tenderness of that kind. The danger of collusion between the officers and the defendant for the purpose of defeating an honest creditor, marks the wisdom of the rule.   Otherwise, a sheriff could return—levied on the goods of the defendant,—and thus satisfy the judgment *pro tanto*, and upon a suit on his bond, call the defendant as a witness to establish that the goods were not his, under some colourable and fraudulent transfer, made for the purpose of defeating the creditor, and thereby hinder and delay creditors and involve them in embarrassing lawsuits.

The sheriff has the remedy in his own hands.   If a claim is set

up to the property ostensibly belonging to the defendant and in his possession, which would make a reasonable man pause and doubt, he may in England summon a jury to try the right, and this would protect him, as is said in 3 Bac. Abr. Sheriff, N. 6, *sed quere ?* or he may apply to the court to enlarge the time of making his return until an indemnity has been given to him; 1 Taunton, 120. Although that proceeding has not been adopted here, a remedy equally efficacious is at hand. He is authorized in such circumstances of reasonable doubt, when the property is claimed by a stranger, to demand indemnity from the plaintiff, and if he refuse to give it, the officer may refuse to levy and sell, and make a special return to the court; 16 Serg. & Rawle, 68. But when, regardless of these safeguards, the sheriff chooses to return a levy, it is at his own peril, because the judgment creditor is thereby estopped and hindered, and may be deprived of his right, unless the sheriff be responsible for his own official act. In the whole range of English decisions, there is perhaps but one exception; and that is where a levy is returned on the goods of a person who is afterwards declared a bankrupt, but the act of bankruptcy was committed before levy. In such case the assignee in bankruptcy is entitled to the goods, and the sheriff being ignorant of the act of bankruptcy at the time of the levy and return, is relieved from its force and the liability it creates; 6 Maule & Selw. 42. But this exception to the general rule seems to be founded on the peculiar policy of the bankrupt system; a cherished policy in England, and which overrides other rules for the purpose of giving efficacy to its peculiar feature—an equilibrium among creditors at the date of the act of bankruptcy. If the goods are eloigned or rescued, the sheriff is liable; 2 Saund. 343. And the English courts will only interfere to relieve a sheriff from the dilemma of an adverse claim, by extending the time for making his return, at their discretion, and upon such terms as they think right; 4 Taunt. 585; 1 Taunt. 120. In New York it has been ruled that it is the duty of the sheriff to sell the goods seized, and which are claimed by a stranger, unless they are proved before an inquest, which the sheriff has authority to empannel, not to be the goods of the defendant. In that case he may return *nulla bona ;* but even on inquest found, if the plaintiff gives him indemnity, he is bound to proceed; 8 Johns. Rep. 185. The rights of judgment creditors cannot be disregarded. A judgment would be of little value if it could be hindered in execution by frivolous pretences, and sham and fraudulent transfers of property. The sheriff is bound to execute his writ, saving only when he adopts the

means furnished for his security, and which do not injure or defeat the creditor. But if he goes on to execution without resort to these, seizes goods, and makes return of record so as to render the judgment extinct *pro tanto*, and defeat and delay its further execution, to the manifest injury of the plaintiff, he does so at his own peril, and every consideration of public policy requires that he should be held accountable. In Hall *v.* Galbraith, 8 Watts, 220, it was ruled by this court that a constable who has reason to doubt the ownership of goods, may require the plaintiff to indemnify him, and if he refuses to sell, not having done so, he becomes liable. The discriminating and accurate judge who delivered the opinion in that case, assimilates the proceeding to like transactions on the part of the sheriff, and fully sustains the case in 16 Serg. & Rawle, already referred to. It would seem, therefore, that in cases where a sheriff returns that he has levied the goods of the defendant, he is to be bound by it. He ought to sell on his *fi. fa.*, but if he return the levy, the *venditioni exponas* may be issued to compel him to sell, and bring him into contempt if he does not.

The court were right, therefore, in rejecting the evidence in the first bill of exceptions, which was a certificate of the sheriff (I will not call it return, for it has no feature of a legal or authorized return) attached to the *alias vend. exponas*, that he could not find the goods described in his writ within his bailiwick. It was no excuse whatever, and afforded him no shelter from liability.

The second exception is to the rejection of the deposition of David Fleming to prove the ownership of the property. This David Fleming, I presume, is one of the defendants in the execution, as the names are identical. But the court did not err in rejecting it, because the ownership was of no consequence after the sheriff was fixed by his return to the *fi. fa.* which I have endeavoured to establish by the preceding observations. So much of the deposition as related to the value of the property was rightly admitted.

The third error assigned, and the last, is, that the court wrongfully instructed the jury " in all they said in regard to the indemnity, and the ownership of the property not being material." This is rather vague. It seems to put the court upon a general quest of errors. The counsel might almost as well have contented themselves with the labour-saving expedient of " general errors."

But upon examination of the charge, I can find nothing erroneous on these topics which could prejudice the plaintiff in error. It is necessary, in order to understand this exception, to state, that

the sheriff declined or neglected to levy on some lumber at a saw-mill belonging to defendants, or one of them, which the plaintiff had directed him to levy on.    The plaintiff stated that a brother of one of the defendants claimed part of the lumber, but he should go on and make the levy, and they would then see who owned the property; that he would give a bond of indemnity before the sale, if required.    The sheriff was satisfied with this arrangement, but never did levy on the lumber, and never called upon or notified the plaintiff, but made the levy on the other property, and returned that levy.    Evidence on both sides was given as to the ownership of this lumber, and the transaction bears strong impress of a fraudulent arrangement between the brother and one of the defendants to cheat his creditors.    The facts, however, were fully submitted to the jury.    But the court said that the testimony given in relation to the indemnity related to the lumber, as it was only with regard to that, there was understood to be any dispute.    The learned judge then states the law correctly, "that if the sheriff had agreed to levy on the lumber, upon the condition that Allison would indemnify him at any time afterwards before sale, if required, and the sheriff neglected to make the levy, and never informed the plaintiff, or called on him for indemnity, that the officer was liable.    In the case of the Commonwealth v. Watmough, 6 Whart. 117, it was decided that the sheriff was not bound knowingly and wilfully to levy on the property of a stranger even before indemnity offered.    But that where the plaintiff showed the property and there was tolerable evidence of title, such as possession in defendant, the sheriff was bound to levy upon it, being indemnified, or answer in damages, and that in such case a stranger could not maintain trespass without showing clearly and satisfactorily that the property belonged to him.    In the case at bar, the jury determined the property to be in defendant, and assessed damages accordingly.    It would be a palpable fraud on the plaintiff to throw him off his guard by trusting to the agreement of the officer to do what his official obligations required him to do, and then let him slip, because he did not keep his word and perform his duty."    The court then say, "As to the goods levied on at Fleming's house, (the principle of Watmough's case does not apply,) and the OWNERSHIP of this property is not material.    The sheriff had made a levy on these, the goods were in the custody of the law, the debt was satisfied *pro tanto*, and the sheriff was bound to make some disposition of them."    I have said what seemed necessary on this topic, and as this is the

sum and substance of all I can discover in the charge in relation to the points indicated in the assignment of error, no further observation is necessary.

Judgment affirmed.