## WM. DORNIN v. A. ÆE. McCANDLESS.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS NO. 1 OF ALLEGHENY COUNTY.

Argued October 27, 1891—Decided January 4, 1892.
[To be reported.]

1. When a sheriff, after an offer of indemnity or without a demand therefor, returns an execution nulla bona, he does so at his own risk; and if it be shown that there is property of the defendant which he might and ought to have levied upon, he will be responsible to the plaintiff. He

may show, however, that goods pointed out to him as the defendant's, were the property of a stranger.

2. A sheriff, after seizing goods so pointed out to him, relinquished his levy and made a return of nulla bona, without having made a demand on the plaintiff for indemnity. In an action against the sheriff for failing to sell the goods, it was error to refuse to permit him to show that they belonged to a stranger to the writ: Miller v. Commonwealth, 5 Pa. 294, distinguished.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 61 October Term 1891, Sup. Ct.; court below, No. 785 March Term 1889, C. P. No. 1.

To the first Monday of March, 1889, William Dornin brought trespass against Alexander Æ. McCandless, sheriff of Allegheny county. The plaintiff's statement of claim, after reciting the recovery by the plaintiff of a judgment in the Court of Common Pleas of Westmoreland county against one Robert Carson, and the issuing of a testatum writ of fieri facias thereon to the defendant as sheriff of Allegheny county, averred that the said sheriff, in obedience to said writ, made a levy upon certain personal property of said Robert Carson which the plaintiff pointed out to the sheriff or his deputy, and afterwards the said sheriff made a return to the writ of " no goods " to the Court of Common Pleas of Westmoreland county, to the great damage of the plaintiff, etc. On October 17, 1889, the defendant filed a plea the nature of which was not shown in the paper-books.

At the trial, on October 7, 1890, the following facts were shown on the part of the plaintiff.

In February, 1888, the plaintiff, residing in Westmoreland county, came to Pittsburgh, bringing with him the testatum writ of fieri facias mentioned in the statement of claim; and in company with his counsel, Mr. John S. Robb, Jr., and James Corbett, a resident of Pittsburgh, he went to the sheriff's office and delivered the writ to the defendant's chief clerk. The plaintiff testified that, while in the sheriff's office, he said to Mr. Robb that if a bond of indemnity were required by the sheriff, Mr. Corbett would sign it, and to call on him, and Mr. Corbett then tendered his services if needed; but, whether this

Charge of Court below.

conversation was heard by the clerk, the defendant was unable to say. On the evening of the same day, one of the defendant's deputies went with the plaintiff to Homestead, Allegheny county, where the plaintiff pointed out a piano, two horses, a wagon, and a lot of household goods, as the property of Carson, which the deputy levied on and took into his actual possession. A part of the goods being claimed by Carson's wife, and a part by his daughter, the sheriff subsequently applied to the Court of Common Pleas No. 1 of Allegheny county, and obtained a rule for an interpleader; but the rule, on motion of plaintiff's counsel, was dismissed on the ground that that court had no jurisdiction of an interpleader under a testatum fieri facias coming into the hands of the sheriff from the Court of Common Pleas of another county. The sheriff then withdrew his levy, relinquished the goods, and returned the writ "no goods." He never made any demand upon the plaintiff for indemnity.

At the close of the plaintiff's case, a motion for a compulsory nonsuit having been refused, the defendant called Agnes Jane Carson and made the following offer:

Counsel for defendant proposes to prove by the witness on the stand that she is the wife of Robert Carson, the defendant; that, in the year 1882, a decree was made entitling her to the benefit of the act of April 3, 1872, P. L. 35, entitled, "An Act entitling married women to the benefit of their separate earnings;" and that the horses, wagon and household furniture, levied upon by the sheriff in this case, were her separate property, bought and paid for with her money.

Objected to, for the reason that the plaintiff is not here to try the right of property now; that time has passed. The proper place to try the right to this property would have been at another time and before another tribunal.

By the court: Objection sustained; exception.[1]

No other testimony being adduced, the court, SLAGLE, J., charged the jury as follows:

This case has turned altogether upon a question of law. As you observed, I declined to hear the testimony proposed to be offered by the defendant. If you believe the testimony of the plaintiff, and there is no reason why you should not, the

plaintiff is entitled to a verdict for the amount shown,* which is admitted.[2]

The jury returned a verdict in favor of the plaintiff for $119.37. A rule for a new trial having been argued, the court, SLAGLE, J., on December 29, 1890, filed the following opinion:

The reasons for new trial are as follows: (1) The court erred in excluding the testimony offered by defendant to show that the defendant in the execution was not the owner of the property levied on by the sheriff. (2) The court erred in instructing the jury to find for the plaintiff, there being no evidence of the ownership of the goods levied on, and there being no evidence of the value of said goods.

The ruling of the court in excluding the testimony offered by defendant as to the ownership of the goods, was based upon the case of Miller v. Commonwealth, 5 Pa. 294. It is claimed by counsel for defendant, that the decision in that case does not justify the action of the court in this, for the reason that the record in that case showed a levy, and the ruling of the court was based upon the effect of the return, which worked a satisfaction of the judgment, while in this case, the return, being nulla bona, could have no such effect.

It is true that in Miller v. Commonwealth, the court lay special stress upon the effect of the return. But the court was applying the principle to the case before it, and in the same connection, says: "The danger of collusion between the officer and the defendant, marks the wisdom of the rule. The sheriff is bound to execute his writ, saving only when he adopts the means furnished for his security, and which do not injure or defeat the creditor." In that case, the court cites Hall v. Galbraith, 8 W. 220, in which no stress seems to be laid upon the fact that the return showed a levy, and in which the court says: "It is of no sort of consequence in whom the right of property is, as that cannot be tried in the action against the constable. It was to prevent collusion between the constable and the defendant, that the act fixes the constable for the debt, unless he pursues the course pointed out by the law." The

---

* I. e., the debt and costs due upon the plaintiff's judgment against Carson.

same principles were held in Commonwealth v. Contner, 18 Pa. 439.

In each of these cases, the record showed a levy. But, in Corson v. Hunt, 14 Pa. 510, the return was, "Returned for want of sufficient indemnification." It was in proof that defendant, a constable, had said that he had levied, and further, that a bond of indemnity had been given and accepted by him. The court says: "He is compelled, on his part, to proceed to a sale of the goods, and must look to his bond for indemnity. The constable is estopped from showing that the goods belonged to another person. As between the plaintiff and the constable, it must be taken to be the property of the defendant in the execution." There is a line of cases which seem to limit the rule established by the foregoing decisions, but in no case has the rule been doubted or expressly qualified.

In Hunt v. Breading, 12 S. & R. 37, Judge GIBSON says: "When the goods are actually seized, the property vests in the sheriff, and the debt becomes satisfied as to the judgment creditor who can look only to the sheriff, unless when the latter chooses to return nulla bona, and then he becomes answerable to the judgment creditor for a false return." That was a controversy among creditors, to determine the right to money made by a sale of real estate. The sheriff had levied on personal property, which was left in possession of the defendant, with consent of plaintiff, and the sheriff so returned. It is clear that if it had not been for the consent of the plaintiff, and the action had been against the sheriff, it would have fallen within the rule of Miller v. Commonwealth. In Hunt v. Breading, the question was one of fraud upon which the case was decided, and the part of the opinion quoted was a mere dictum, which, coming from Judge GIBSON, would have all the force of law had it not been expressly disapproved in Cathcart's App., 13 Pa. 422, and in part overruled by other cases in which it is held that in the absence of fraud, the plaintiff in an execution may authorize the sheriff to withdraw from a levy without working satisfaction of his claim, even as against other creditors: Cummin's App., 9 W. & S. 73; Davids v. Harris, 9 Pa. 503; Cathcart's App., 13 Pa. 416; McLaughlin v. McLaughlin, 85 Pa. 317.

The defendant especially relies upon the case of Common-

wealth v. Watmough, 6 Wh. 117, which he claims to be on all fours with the case at bar.   It is true, that the court below, in that case, said : " The plaintiff alleges that there was property of I. T. Seal sufficient to make the money, on which the sheriff actually levied ; " but as the property referred to was bank stock, it is evident there could not have been an actual seizure.

The return was nulla bona, and the opinion of the court is as to the duty of the sheriff to seize and sell goods when pointed out to him, and indemnity offered, and his liability upon refusal so to do.   This case is cited in Miller v. Commonwealth as authority in case of such refusal to levy, and it is not intimated that it in any way infringes upon the rule adopted in the same case as to goods actually seized.

In Connelly v. Walker, 45 Pa. 449, in which the record showed a levy, and it was proved that the plaintiff ·had given indemnity, the court received evidence as to ownership of the property, and the Supreme Court considered its effect.   But it is evident the court so acted only " because the counsel for plaintiff in error confess that there was no controversy about the form of action or pleading, and that the issue was upon the right of property and the action of the sheriff ; " and Judge WOODWARD says, " to review the record, as made up, we must now look at the issue upon the right of property."   The return showed a levy, and was clearly within the ruling of Miller v. Commonwealth, but certainly not intended to weaken its effect, as no such intimation was made.

Commonwealth v. Vandyke, 57 Pa. 34, affirms the doctrine of Commonwealth v. Watmough, 6 Wh. 117, " that in an action against the sheriff for a false return of nulla bona to a writ of fieri facias, unless it appears that the property pointed out by the plaintiff actually belonged to the defendant in the execution, an offer to indemnify him will not make him liable in damages."   In this case, the return was nulla bona, with a full statement of the reason for not making a levy upon the property pointed out, which the court- regarded as sufficient.   The reference to Connelly v. Walker is not justified by the opinion in that case.

We do not find the precise question involved in this case raised or considered in any other.   The cases in which the rule adopted has been enforced, seem to place it, not solely upon

the effect of the return, but largely upon the failure of the sheriff to perform his duty. "It was his duty to levy as soon as the writ came into his hands and the plaintiff showed him property to levy on:" Shannon v. Commonwealth, 8 S. & R. 449.

"Having seized property, a qualified title vested in the sheriff, and it was his duty to sell, unless there was a reasonable doubt as to the title of the defendant, when he might call upon the plaintiff for indemnity:" Spangler v. Commonwealth, 16 S. & R. 70. "When the sheriff has received indemnity, it is his duty to proceed and sell. A neglect or refusal to comply would subject him to an action to which an allegation that the goods belonged to a third person would be no defence, for it was his duty to comply with the directions of his writ, and trust to his indemnity:" Nagle v. Stroh, 4 W. 125 ; Connelly v. Walker, 45 Pa. 450 ; Corson v. Hunt, 14 Pa. 512.

It is only where indemnity has been demanded and refused that he is justified in refusing to execute his writ, for "it has nowhere been held that the plaintiff is bound to offer indemnity before it is required by the officer, and this should appear in the return:" Hall v. Galbraith, 8 W. 222. In Commonwealth v. Vandyke, 57 Pa. 34, Judge SHARSWOOD doubts whether insufficiency of indemnity offered is any defence, unless submitted to and decided by the court on proper motion, and adds: "I cannot comprehend how it can justify a false return, though it may, and no doubt does justify no return at all; but that is to be shown in answer to a rule upon him to return his writ."

The result of these cases seems to be that the sheriff may refuse to levy, whether indemnified or not, and return his writ nulla bona ; and in an action against him for false return, the burden of proof is on the plaintiff to show goods of defendant in the execution upon which a levy might have been made, and to show his damage by proof of their value. But, if the sheriff has actually levied upon the property by virtue of his writ, it is a declaration that it belongs to the defendant; and he will not be permitted to dispute the fact, though he may mitigate damages by showing the actual value of the property, or that it was not applicable to plaintiff's claim by reason of prior liens: Commonwealth v. Contner, 18 Pa. 446.

This is clearly the rule when he returns a levy without sufficient excuse for its abandonment. But it is the fact of

Opinion of Court below.

levy which works this effect. Seizure and levy are converti-
ble terms. "A levy is a seizure. The indorsement of it upon
his writ by the sheriff, is but evidence of the levy; and it can-
not be exclusive evidence of it, except in favor of subsequent
execution creditors, or purchasers:" Weidensaul v. Reynolds,
49 Pa. 76. Even in a case of distribution, the Supreme Court,
in Wood v. Vanarsdale, 3 R. 401, admitted evidence to show
what was in fact done by the sheriff, and say "the return of
the levy can make no difference;" and this would seem to be
specially applicable to an action for false return, where the
plaintiff's case must rest upon evidence outside the return itself.
In this case it was admitted that the sheriff had made an actual
levy. If he had so returned, giving no excuse for not proceed-
ing to sale, under the authority of Miller v. Commonwealth,
and other cases cited, he would have been precluded from
showing that the property did not belong to the defendant, and
we see no good reason why he should have greater right, under
a false return, than he would have had under a true return.

It may seem to be a hard rule, but "the sheriff has the rem-
edy in his own hands. He is authorized, in such circumstances
of reasonable doubt when the property is claimed by a stranger,
to demand indemnity from the plaintiff, and if he refuses to
give it, the officer may refuse to levy and sell, and make a
special return to the court:" Miller v. Commonwealth, 5 Pa.
297.

Nor is it altogether a rule of public policy. By the return of
nulla bona, he casts upon the plaintiff the burden of proving
title in the defendant; whereas, in an action by the claimant
of goods against the sheriff, for their seizure and sale, or upon
an issue under the interpleader act, the burden is upon the
claimant to show title. This could be avoided by imposing
the burden upon the sheriff, in case of seizure; but we do not
find this rule in the decided cases, and feel constrained to
enforce the rule, as we understand it, and hold the sheriff
absolutely bound when he has seized goods and afterwards
abandoned them without the plaintiff's consent, and without
taking advantage of the means the law has provided for his
protection.

As to the second complaint there can be little question. In
Corson v. Hunt, 14 Pa. 513, the court says: "But here the

Arguments.

presumption is that the value of the goods was at least equal to the amount claimed in the execution." "Prima facie, he is responsible for the whole amount of the sum indorsed on the execution. But he may reduce this by showing that no diligence of his could have collected so much:" Commonwealth v. Contner, 18 Pa. 446. "The sheriff returned that he had levied the debtor's goods, but without specifying the value; and the presumption being that it was equal to the amount of the debt, it lay on the defendant to show the true value, prior liens, or subsequent matter of discharge:" Beale v. Commonwealth, 7 W. 187.

Rule discharged.

—Judgment having been entered, the defendant took this appeal, specifying that the court erred:

1. In refusing defendant's offer.[1]

2. In the charge of the court.[2]

*Mr. R. B. Petty*, for the appellant:

There is but one question in the case: Is the sheriff, when by mistake he has levied on the goods of a third party, bound to hold the levy and sell? Having committed a trespass by making the levy, is he bound to aggravate it by pursuing the levy, or is he permitted to repair the wrong so far as possible by restoring the goods to the owner? The court below relied on Miller v. Commonwealth, 5 Pa. 294, but it is apparent that that case turned entirely on the effect of the sheriff's return. There is nothing in any of the cases referred to by the court, to justify the ruling in the present case. They establish the following propositions:

1. When the sheriff refuses to levy he becomes liable to the plaintiff, if the latter show that the goods upon which he directed the sheriff to levy were in fact the goods of the defendant: Shannon v. Commonwealth, 8 S. & R. 450. 2. Where goods levied on are claimed, and the plaintiff furnishes indemnity which is accepted by the sheriff, the sheriff is bound to proceed to sale and rely on his indemnity: Corson v. Hunt, 14 Pa. 510; Connelly v. Walker, 45 Pa. 449. 3. When the sheriff has made a levy and returns the levy, this works a satisfaction pro tanto of the execution, and the sheriff is therefore liable to the plaintiff for the value of the goods levied on:

Opinion of the Court.

Miller v. Commonwealth, 5 Pa. 294 ; Hall v. Galbraith, 8 W. 220. 4. Where the sheriff makes a levy, and the goods are claimed, and the sheriff withdraws from the levy and returns nulla bona, he is only liable to the plaintiff on proof being made that the goods in fact belonged to the defendant: Commonwealth v. Watmough, 6 Wh. 117 ; Commonwealth v. Vandyke, 57 Pa. 34; Commonwealth v. Megee, 4 Phila. 258. See also Freeman on Executions, §§ 271, 356.

*Mr. J. Y. Woods* (with him *Mr. H. S. Floyd*), for the appellee :

1. The defendant McCandless filed no special plea which would have given the plaintiff notice to be prepared, on the trial, to meet the claim of property in others than the defendant in the execution. However, the right of property cannot be tried in an action against the officer for neglect to perform his duties : Hall v. Galbraith, 8 W. 220 ; Commonwealth v. Contner, 18 Pa. 439. Especially can this not be done, when an application for an interpleader had previously been dismissed for want of jurisdiction, and the trial of the right of property had thus been declined.

2. The doctrine that a sheriff, after levying on personal property, may relinquish his levy without notice to the plaintiff, would place every plaintiff in the state at the mercy of unlearned deputy sheriffs, and open a wide door for corruption and collusion. The sheriff gave the plaintiff no opportunity to furnish the indemnifying bond which he was prepared to give. It is incumbent on the officer, when sued, to show that the property levied on was not sufficient to satisfy the plaintiff's claim ; otherwise he is responsible for the full amount of the claim : Miller v. Commonwealth, 5 Pa. 294; Corson v. Hunt, 14 Pa. 513 ; Commonwealth v. Contner, 18 Pa. 439.

OPINION, Mr. CHIEF JUSTICE PAXSON :

The plaintiff issued a testatum fieri facias out of the Court of Common Pleas of Westmoreland county, directed to the defendant as sheriff of Allegheny county, and instructed him to levy upon certain personal property alleged by the plaintiff to belong to Carson, the defendant in the execution. The sheriff levied upon the property referred to, but subsequently becom-

Opinion of the Court.

ing satisfied that Carson was not the owner, he abandoned the levy and returned his writ nulla bona. It does not appear that he claimed to be indemnified, nor that indemnity was tendered him. This suit was brought to recover damages for not proceeding to sell the property levied upon.

Upon the trial in the court below, the defendant offered to prove by Mrs. Agnes Jane Carson, the witness on the stand, that she was the wife of Robert Carson, the defendant in the execution upon which the levy had been made by the sheriff; that, in the year 1882, a decree was made entitling her to the benefits of the act of April 3, 1872, P. L. 35, entitled "An Act entitling married women to the benefit of their separate earnings;" and that the horses, wagon, and household furniture, levied on by the sheriff in this case, were her separate property, bought and paid for with her money. This offer was rejected by the court, and forms the subject of the first specification of error.

The defendant was sued for making a false return. The offer was to prove that his return was true; that the defendant in the execution had no goods upon which he could levy, and that the property which was pointed out to the sheriff as the property of said defendant was in fact the property of some one else. It would certainly be a severe rule to hold that when a sheriff is sued for making a false return he could not show that his return was true. This is precisely what we are asked to do in this case. The learned judge based his ruling upon Miller v. Commonwealth, 5 Pa. 294. It is true, there was an offer to prove in that case that the goods levied upon did not belong to the defendant in the execution, which offer was rejected by the court below and affirmed here. But in that case the sheriff had returned a levy, and the rejected offer was simply to contradict his own return. After having returned to the court that he had "levied on a horse, wagon, sleigh, and clock," the property of the defendant in the execution, he certainly had no right to show that said property belonged to some one else. His mouth was closed by his official return. As was said by Justice COULTER, in that case: "Thus, when he returns, goods levied, with a schedule, he assumes the responsibility that they belong to the defendant; and he will afterwards, as a general rule, be estopped from denying that

they were such." Where the sheriff returns a levy upon personal property, it is a satisfaction of the judgment pro tanto, and there is every reason, in good sense and public policy, why he should not be allowed to contradict his return. In the case in hand, there was no return of a levy; the return was, as before stated, nulla bona; and the single question is whether he can show that his return was true.

It was contended, however, that the sheriff was fixed because he had made an actual levy. It was true that certain goods had been pointed out to him as the property of the defendant in the execution, and he had levied upon them. But was this an official declaration on his part that they did belong to the defendant? At that time he had no personal knowledge in regard to the ownership, except the plaintiff's statement. If that statement was not true, if the property did not belong to the defendant, if the plaintiff had deceived him in this regard, was he bound to go on and sell, or return a levy, when he knew the property belonged to some other person? Where the sheriff has a reasonable doubt, and the property is claimed by a third person, he may demand indemnity, and if it is refused, he may decline to levy and sell and apply to the court for relief: Spangler v. Commonwealth, 16 S. & R. 68. And the interpleader act provides a remedy by which the sheriff may be protected in cases of doubt. But where he is in no doubt; where he knows the property pointed out belongs to a stranger, is he bound upon the penalty of his official bond to proceed? It is true, if he does not, he takes the risk; that is, he acts as a judge in his own case. Yet, does he incur any further penalty than to be mulcted in damages in case it turns out that he was mistaken? May he not show, in support of his return of nulla bona, that in point of fact the defendant in the execution had no goods upon which he could levy?

The proposition that a sheriff is bound to violate the law, and commit a trespass by levying upon property which he knows to belong to A, upon an execution against B, has no support in reason or authority. This very point was made in Commonwealth v. Watmough, 6 Wh. 117. There, the court below was asked to instruct the jury that, as the plaintiffs had offered to indemnify the sheriff, he was bound to proceed, whether the defendant in the execution was the owner or not. This the

court refused, and this court, through Justice KENNEDY, sustained the refusal in a very emphatic manner. It was said by that learned justice, at page 140 :

"It would certainly have been a most palpable error in the court, if it had affirmed the proposition advanced by the plaintiffs' counsel on this point. It would, in effect, have been declaring that it was the duty of the sheriff to do an illegal act, because the plaintiffs had offered to indemnify him if he did so ; for surely it cannot be seriously alleged that it would not be an illegal act and a most glaring violation of law, in a sheriff to seize and sell, knowingly, the property of a stranger or third person, under an execution, who was nowise liable for the payment of the debt or money thereby directed to be levied. . . . . . The sheriff, it is true, is bound to take property, when pointed out to him by the plaintiff in the execution as belonging to the defendant, if it be his in fact, though it may be doubtful at the time whether it is so or not, if the plaintiff offers to indemnify him. And if he should refuse in such case, after an indemnity offered, to proceed against the property under an execution, and the plaintiff, in a suit brought against the sheriff for not having so proceeded, should show clearly that the defendant in the execution was the owner of it at the time, the plaintiff would be entitled to recover ; but not otherwise. So that the sheriff, if he refuses to take and sell the property, after being offered an indemnity by the plaintiff, takes the risk and responsibility upon himself of showing, if sued afterwards by the plaintiff, that the property did not belong to the defendant named in the execution ; and this is the most that can be claimed of him."

I have quoted from this opinion at some length, for the reason that we believe it embodies the true rule upon this subject. The criticism that it applies to a case of stocks is without merit. The decision is placed upon a broad ground that applies equally to other species of property. The doctrine of that case is fully affirmed in Commonwealth v. Vandyke, 57 Pa. 34, where it was held that in an action for a false return of nulla bona, unless that it appears that the property pointed out belonged to the defendant in the execution, an offer to indemnify the sheriff will not make him liable. The true rule to be deduced from the authorities is this : that

when the sheriff returns an execution nulla bona, he does so at his own risk, and if it is shown that there is property of the defendant which he might and ought to have levied upon, he will be responsible. It is competent, however, for him to show that the property pointed out to him was the property of a stranger. In other words, he may show his return to be true, for, if true, the plaintiff in the execution has sustained no injury.

> The judgment is reversed, and a venire facias de novo awarded.